Benjamin C. Deming (SBN 233687)
DNL ZITO
3232 McKinney Ave, Suite 500
Dallas, TX 75204
(214) 799-1145
bdeming@dnlzito.com

*Attorneys for Plaintiff*
*Urban Aeronautics, Ltd.*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| URBAN AERONAUTICS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> ARCHER AVIATION, INC., <br><br> Defendants. | Case No.: 5:26-cv-6140 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** |

Plaintiff Urban Aeronautics Limited (UAL), by its undersigned counsel, alleges as follows for its Complaint against Defendant Archer Aviation, Inc. (Archer).

**THE NATURE OF THIS ACTION**

1.    UAL brings this action against Archer pursuant to 35 U.S.C. §101 et. seq. and §§271, 281, 283, 284, & 285 inclusive, for infringement of one or more claims of U.S. Patent 7,946,528 entitled "Flight Control System Especially Suited for VTOL Vehicles."  Defendant has been made aware of the '528 Patent at least as early as July 27, 2025 and continues to infringe.

**THE PARTIES**

2.    Plaintiff UAL is an Israeli company with an address at 10 Nahal Snir Street, Yavne 8122447, Israel.  Plaintiff is the owner by assignment of the '528 Patent as shown on the cover page of the '528 Patent.

- 1 -

3.    Defendant Archer is a California corporation with a headquarters at 190 West Tasman Drive, San Jose, California 95134.

4.    Archer makes, uses, offers to sell, and sells the accused eVTOL aircraft, including the model known as the Archer Maker and the Archer Midnight (the Archer Aircraft) throughout the United States.  The Archer Aircraft include all of the elements of at least one of the apparatus claims of the '528 Patent and when used practice all of the elements of at least one of the method claims of the '528 Patent.  Thus Defendant's actions in making, using, offering to sell and selling the Archer Aircraft are acts of direct infringement of the '528 Patent and Defendant's inducement of the use of the Archer Aircraft by others are acts of induced infringement.

5.    Defendant manufactures, uses, offers for sale, sells, provides, distributes, licenses, supplies, and services the Archer Aircraft which include the claimed aircraft flight control system and/or that use the claimed method of the '528 Patent in operation throughout the United States.

6.    Defendant has have induced customers of Defendant to use the accused Archer Aircraft and to practice the claimed method of the '528 Patent throughout the United States.

### JURISDICTION AND VENUE

7.    This is an action for patent infringement arising under the laws of the United States, 35 U.S.C. §271 et seq.

8.    This Court has subject matter jurisdiction over this action pursuant to 35 U.S.C. §§271, 281 and 28 U.S.C. §§1331 and 1338(a), federal question.

9.    This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District.

10.    Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant is headquartered in this District and has committed acts of infringement in this District.

### BACKGROUND AND GENERAL ALLEGATIONS

11.    The inventor of the patent-in-suit, Rafi Yoeli is an Israeli pilot who served as a reserve officer in the Israeli Air Force.  He is also an inventor and the designer of two proposed flying cars, the Urban Aeronautics X-Hawk/CityHawk and the Tactical Robotics Cormorant.  He

was also the CEO of Plaintiff Urban Aeronautics, the owner of the '528 Patent by assignment from Mr. Yoeli.

12.    Mr. Yoeli worked for Israel Aerospace Industries Ltd., Boeing and Aero Design & Development Ltd.  Urban Aeronautics, Ltd. was founded by Mr. Yoeli in 2000. Tactical Robotics, a subsidiary of Plaintiff UAL, designed and tested the Tactical Robotics Cormorant, while UAL developed the X-Hawk and CityHawk vehicles.

13.    The Cormorant's first flight was in 2010 and flew fully autonomous in 2013.  The X-Hawk/City Hawk also had flights in 2010.  UAL has been on the forefront of VTOL aircraft for urban transportation for over a decade.



14.    Mr. Yoeli's pioneering work in the VTOL field has benefitted the advancement of technology and has inspired others.  He holds numerous patents for his work in this field, including the '528 Patent asserted in this matter.  He has been recognized by numerous organizations and publications for his work in VTOL urban craft and military support and rescue VTOL vehicles.

15.    UAL, led by Dr. Yoeli, has worked to solve many of the problems that are inherent in multi-rotor flying vehicle designs.  One challenge that UAL worked to overcome was maintaining controllability and allowing a safe landing of the aircraft in the event of a subsystem failure.  UAL developed a novel system that allows aircraft to operate at reduced power and performance sufficient to allow a safe emergency landing to be completed. This system is described and claimed in the '528 Patent, among others.

16.    The '528 Patent protects UAL's innovative control system which is vital to VTOL safety.  This system has been incorporated into modern VTOL craft.

**U.S. PATENT NO. 7,946,528**

17.    On May 24, 2011, United States Patent No. 7,946,528, was duly and legally issued by the United States Patent and Trademark Office . The '528 Patent claims patent-eligible subject matter and is valid and enforceable.  UAL is the exclusive owner of all rights, title, and interest in the '528 Patent, including the right to bring this suit for injunction and damages, and including the right to sue and recover all past, present, and future damages for infringement of the '528 Patent.

18.     Defendant is not licensed to the '528 Patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '528 Patent whatsoever. A true and correct copy of the '528 Patent is attached hereto as **Exhibit A**.

19.    UAL is the current owner and assignee of the patent-in-suit.

20.    The '528 Patent is presumed valid under 35 U.S.C. § 282.  Plaintiff has at all time complied with 35 USC § 287.

21.    The claims of the '528 Patent are directed to "An aircraft flight control system having plural control subsystems with redundancies" (claim 1- 9) and to "A method for providing aircraft flight control utilizing plural control subsystems with redundancies." (claims 10 -18) Claim 1 of the '528 Patent recites:

> *Claim 1. An aircraft flight control system having plural control subsystems with redundancies organized so as to provide continued but degraded control power over critical aircraft flight operating parameters even if any one complete control subsystem catastrophically fails, said system comprising:*
>
> > *a plurality of pilot controlled input sensors associated with each of a plurality of degrees of freedom in aircraft flight movement;*
> >
> > *a plurality of aircraft flight control actuators associated with each of the plurality of degrees of freedom in aircraft flight movement;*
> >
> > *a plurality of aircraft flight state sensors associated with each of a plurality of aircraft flight state conditions including at least altitude and speed;*
> >
> > *the plural control subsystems, each having at least one control computer subsystem connected to (a) receive inputs from at least one of said pilot controlled input sensors for each of said plurality of degrees of freedom, (b) receive inputs from at least one of said flight state sensors for each of said plurality of aircraft flight conditions, and (c) provide outputs to at least one of said flight control actuators associated with each of said plural degrees of freedom:*

*said inputs and outputs to the control computer subsystem of each of said plural control subsystems being selected such that a catastrophic and complete failure of any one of said plural control subsystems causes continued control power over critical aircraft flight parameters by remaining unfailed ones of said plural control subsystems, degraded to less than 100% of total available control power, but sufficient to permit controlled aircraft descent to a landing.*

### INFRINGEMENT

22.   Archer, uses, offers for sale, sells, provides, distributes, licenses, supplies, and services VTOL aircraft, including the Archer Midnight and the Archer Maker (the Archer Aircraft) which infringe the claims of the Patents-in-Suit.

 

23.   These are the Archer Aircraft currently known to Plaintiff.  Other infringing aircraft may be identified through discovery.

24.   The accused Archer Aircraft infringe system claims 1-5, and 9 and, in use, infringe method claims 10-14 and 18 of the '528 Patent.

25.   Defendant manufactures, uses, offers for sale, sells, provides, distributes, licenses, supplies, and services Archer aircraft which include control subsystems with redundancies configured to provide continued but degraded control power over critical aircraft flight operating parameters even if any one complete control subsystem catastrophically fails.  The Archer Aircraft products infringe claims of the Patent-in-Suit.

26.   Prior to filing this action, UAE sent a letter to Archer dated June 27, 2025, offering Archer to consider a license under the '528 Patent.  A copy of this letter is attached as **ExhibitB**. As a result, Archer had an actual knowledge of the '528 Patent since receipt of that letter and through the claim charts that were attached to that letter Archer was aware of the infringement.

27.    Defendant has, under 35 U.S.C. §271(a), directly infringed, literally and/or under the doctrine of equivalents, one or more claims of the '528 Patent, by manufacturing, using, offering for sale, selling, providing, distributing, licensing, suppling, servicing and/or importing into the United States, Defendant's Archer Aircraft.

28.    Defendant also indirectly infringed the '528 Patent by actively inducing the direct infringement by third parties under 35 U.S.C. §271(b).  Defendant has knowingly and intentionally actively induced others to directly infringe at least one claim of the '528 Patent by providing Archer Aircraft which are "used" and by providing instruction for customers to use to provide aircraft flight control to devices throughout the United States.

29.    Defendant has, under 35 U.S.C. §271(a), directly infringed, literally and/or under the doctrine of equivalents, one or more claims of the '528 Patent, by manufacturing, using, offering for sale, selling, providing, distributing, licensing, suppling, servicing and/or importing into the United States aircraft with control subsystems with redundancies organized so as to provide continued but degraded control power over critical aircraft flight operating parameters even if any one complete control subsystem catastrophically fails.

30.    Plaintiff has conducted a detailed analysis, establishing and confirming that Defendant's Archer Aircraft directly infringe.

31.    A demonstration of the correspondence of the operation of the Archer Aircraft with elements of an exemplary but non-representative claim of the '528 Patent is included below and detailed in the claim charts attached hereto as part of **Exhibit B**.

32.    The Archer Aircraft include the flight control system in the preamble of Claim 1 of the '528 Patent, as evidenced by the information describing Archer Aircraft below:

> [Claim 1.preamble] *An aircraft flight control system having plural control subsystems with redundancies organized so as to provide continued but degraded control power over critical aircraft flight operating parameters even if any one complete control subsystem catastrophically fails, said system comprising:*

COMPLAINT  (Case No. 5:26-cv-6140)

> To eliminate any single point of failure within the aircraft, the company incorporates extensive redundancies. Each critical system has two or more modes of functioning and operation for ultimate safety. For example, if one of the eVTOL's multiple electric motors fails, the aircraft is still capable of safe flight. Redundant avionics include four flight control computers, fly-by-wire systems, pilot displays, and communication links between sensors, actuators, and flight controls. Additionally, multiple inertial navigation, global navigation satellite systems, and above-ground level sensors optimize data and operations for pilots and aircraft. The aircraft also includes sensors, a radar and laser altimeter, for measuring the height above ground. These multiple fail-safe measures ensure passengers enjoy a secure and reliable flight.
>
> *"To eliminate any single point of failure within Archer's aircraft, the company incorporates extensive redundancies. Each critical system has two or more modes of functioning and operation for ultimate safety."*

Source: Archer Aviation 2022 Company of the Year (Frost & Sullivan 2022) (https://www.frost.com/wp-content/uploads/2022/09/Archer-Aviation-Award-Write-Up.pdf)

*[Claim 1.a] a plurality of pilot controlled input sensors associated with each of a plurality of degrees of freedom in aircraft flight movement;*

The Maker and Midnight have a flight control system that includes multiple different pilot inputs that are used to control the aircraft's flight, including specific inputs that are associated with specific degrees of freedom. These include multiple inceptors that are connected to the flight control system and are used to "create roll, yaw, pitch, and/or thrust commands." US Pat. Pub. 2024/0400222 ("the '222 Publication" ¶ [0083]).

*[Claim 1.b] a plurality of aircraft flight control actuators associated with each of the plurality of degrees of freedom in aircraft flight movement;*

The Maker and Midnight have a flight control system that is "capable of controlling control surfaces and their associated actuators." '222 Publication ¶ [0053]. This system is designed respond to the failure of one or more actuator, and make "[a]lternative commands(s) (e.g. yaw, pitch, roll, thrust, or torque)" "in response to the failure of an actuator" to maintain controllability of the aircraft following a failure. '222 Publication ¶ [0076]. These flight control actuators are used to control flight surfaces, such as lift or tilt propellers, that are associated with the degrees of freedom in aircraft flight movement. '222 Publication ¶ [0043] ("[propellers] may be canted . . . about a line that is parallel

- 7 -

to the forward-rearward direction, analogous to the roll degree of freedom of the aircraft").

*[Claim 1.c] a plurality of aircraft flight state sensors associated with each of a plurality of aircraft flight state conditions including at least altitude and speed;*

The Maker and Midnight have a flight control system that includes "one or more sensors" that are used to detect the flight state conditions of the aircraft and surrounding environment conditions. '222 Publication ¶ [0050]. The aircraft include, at a minimum, sensors that are capable of measuring and providing data to the flight control system regarding "airspeed, vehicle orientation, vehicle load factor, measured acceleration, vehicle mass and inertia, air density, altitude, [and] aircraft mode." '222 Publication ¶ [0072].

*[Claim 1.d] The plural control subsystems, each having at least one control computer subsystem connected to (a) receive inputs from at least one of said pilot controlled input sensors for each of said plurality of degrees of freedom, (b) receive inputs from at least one of said flight state sensors for each of said plurality of aircraft flight conditions, and (c) provide outputs to at least one of said flight control actuators associated with each of said plural degrees of freedom:*

The flight control systems have control subsystems that each have "a flight control computer" that receives data from the sensors in the flight control system and controls the actuators in response. '222 Publication ¶ [0051]. These subsystems may have multiple flight control computers that receive and process data and provide outputs to the flight control actuator(s). '222 Publication ¶ [0052-55].

*[Claim 1.e] said inputs and outputs to the control computer subsystem of each of said plural control subsystems being selected such that a catastrophic and complete failure of any one of said plural control subsystems causes continued control power over critical aircraft flight parameters by remaining unfailed ones of said plural control subsystems, degraded to less than 100% of total available control power, but sufficient to permit controlled aircraft descent to a landing.*

- 8 -

"To eliminate any single point of failure within Archer's aircraft, the company incorporates extensive redundancies. Each critical system has two or more modes of functioning and operation for ultimate safety."

Source: Archer Aviation 2022 Company of the Year (Frost & Sullivan 2022) (https://www.frost.com/wp-content/uploads/2022/09/Archer-Aviation-Award-Write-Up.pdf)

33. Defendant has infringed at least claims 1-5, 9-14 and 18 of the '528 Patent under 35 U.S.C. § 271(a) and/or (c) by: (i) making, using, distributing, offering to sell, selling and/or importing into the United States, systems that infringe the asserted claims and by performing the claimed methods in the United States (35 U.S.C. § 271(a)); (ii) by inducing infringement of others and by inducing others to use the Archer Aircraft and/or sell the Archer Aircraft and/or to perform the claimed methods in the United States (35 U.S.C. § 271(b)).

34. By engaging in accused activity including making, using, distributing, offering to sell, selling and importing Archer Aircraft in the United States. Defendant  infringes claims of the '528 Patent.

35. Upon information and belief, Defendant has directly infringed and continues to directly infringe one or more of claims of the '528 Patent under 35 U.S.C. §271(a) ("whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.") by engaging in accused activity including making, using, distributing, offering to sell, selling and importing Archer Aircraft and/or practicing the methods of the claims of the '528 Patent with Archer Aircraft in the United States.

36. Upon information and belief, Defendant has indirectly infringed and continues to indirectly infringe one or more of the asserted claims under 35 USC §271(b): (Whoever actively induces infringement of a patent shall be liable as an infringer.") by (i) providing Archer Aircraft which include an infringing system and are used by customers, which use is an act of direct

COMPLAINT  (Case No. 5:26-cv-6140)

infringement and (ii) by providing Archer Aircraft , which when used, directly infringe the method claims by practicing the claimed method of aircraft control.

37.    Neither Defendant nor its customers have a license or authority to use or practice the '528 Patent.

38.    Upon information and belief, Defendant has no good faith defense to Plaintiff's infringement allegations.

39.    Defendant has been on notice of their infringement of the '528 Patent since June 27, 2025, when written correspondence was sent to Defendant identifying the infringing activities, accused Archer Aircraft, and identifying the '528 Patent.  Defendant has since that time and is now intentionally continuing its knowing infringement.

40.    As a result of Defendant's infringement of the '528 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

## COUNT I

### DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,946,528

41.    The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

42.    Defendant Archer  has infringed, at least claim 1-5, 9-14 and 18 of the '528 Patent, under 35 U.S.C. § 271(a), by making, using, offering to sell, selling and importing the Archer Aircraft in the United States.

43.    Defendant does not have license or authority to the '528 Patent.

44.    As a result of Archer's infringement of the '528 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

## COUNT II

### INDIRECT  INFRINGEMENT OF U.S. PATENT NO. 7,946,528

45.    The allegations of each of the paragraphs above are hereby re-alleged and incorporated herein by reference.

46.    Upon information and belief, Defendant has indirectly infringed one or more of the claims of the '528 Patent under 35 U.S.C. §271(b) by inducing infringement of the '528 patent through use of Archer Aircraft by its customers and by inducing the practicing of the method claims of the '528 Patent by its customers.

47.    Defendant does not have license or authority to the '528 Patent.

48.    As a result of Archer's infringement of the '528 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for the following relief:

a.    For Judgment declaring that Archer has infringed the '528 Patent;

b.    For a judgment awarding Plaintiff compensatory damages as a result of Defendant's infringement sufficient to reasonably and entirely compensate Plaintiff for infringement of the '528 Patent in an amount to be determined at trial of at least a reasonable royalty;

c.    For a judgment declaring that this case is exceptional and awarding Plaintiff its expenses, costs and attorneys' fees in accordance with 35 U.S.C. § 285 and Rule 54(d) of the Federal Rules of Civil Procedure;

d.    For a judgment awarding Plaintiff prejudgment interest pursuant to 35 U.S.C. §284, and a further award of post judgment interest, pursuant to 28 U.S.C. §1961, continuing until such judgment is paid.

e.    For a judgment awarding Plaintiff enhanced damages under 35 U.S.C. §284; and

f.    For such other relief to which Plaintiff is entitled under the applicable United States laws and regulations or as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to the Federal Rules of Civil Procedure Rule 38(b), Plaintiff hereby demands trial by jury as to all claims in this litigation.

June 19, 2026                                    Respectfully submitted,

                                                /s/ Benjamin C. Deming
                                                Benjamin C. Deming (233687 CA)

- 11 -

COMPLAINT  (Case No. 5:26-cv-6140)

DNL ZITO
3232 McKinney Avenue, #500
Dallas, Texas 75204
214-799-1145
bdeming@dnlzito.com

Joseph J. Zito (*pro hac vice* to be filed)
DNL ZITO
1250 Connecticut Ave NW, Suite 700
Washington, DC 20036
202-466-3500
jzito@dnlzito.com

Attorneys for Plaintiff

COMPLAINT  (Case No. 5:26-cv-6140)